UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

Eve E Mory aka Eve Mary Maddux                    Objection to Creditors Motion to
                                                  Terminate Automatic Stay

                Debtor                            Case No.: 18-22689-rdd
                                                  (Chapter 13)

                                                  Assigned to:
                                                  Hon. Robert D. Drain

I Eve E. Mory a/k/a Eve Mary Maddux herby depose and say:

1. I am the Pro Se debtor of the referenced action. I hereby object to the Creditor's motion BSI Financial Services, Inc., as servicing agent for US Bank Trust National Association, As Trustee Of The Igloo Series II Trust And A Delaware Statutory Trust, a secured creditor of Debtor, by its attorneys, filed on May 14, 2018 and returnable on July 25, 2018 at 10:00 a.m., at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601 for an (1) Order pursuant to 11 U.S.C § 105(a) granting in rem relief as to the real property commonly known as 97 1st Avenue, Nyack, NY 10960 (2) an Order pursuant to 11 U.S.C. § 362(d)(4)(B) terminating the automatic stay as to movant's interest in in real property commonly known as 97 1st Avenue, Nyack, NY 10960 and for such other relief as the Court may deem proper.

2. The basis of the Creditors motion derives from an alleged note executed by Compton Maddux on or about the 17th day of December 2004 in the principal amount of $ 415,000.00 secured by a mortgage executed by Eve Maddux and Compton Maddux recorded in the Office of the Rockland County Clerk on January 19, 2005 in instrument ID 2005-00003496 covering the premises commonly known as 97 1st Ave Nyack NY 10960. This alleged mortgage was given to NJ Landers Corp as the lender ad for the proposes of recording the Mortgage, Mortgage Electronic Registration Systems Inc. (MERS).

3. The creditor in its Affirmation in support of motion to terminate the automatic stay filed on May 14,2018 to attempt to link this mortgage to them by way of a fraudulent incorrect assignment of mortgage and has annexed in to its affirmation as exhibit A. These documents used to proffer the chain of ownership to the creditor is defective to say the least. It is defective as follows:
    a. The Note dated December 17, 2004 states that it was **executed in Scarsdale New York. See page 1 of the Note. That is not true as it was not.**
    b. The Note Instructs the Debtor to make payments to NJ Lenders Corp, a Corporation at 219 Paterson Ave. Little Falls NJ 07424.
    c. The Note Instructs that the monthly payments should be $ 2,494.88 per month. This is not the same as the creditors monthly accounting.

1

    d. Page 3 of the Note the Alonge is stamped twice pay to the order of Wachova Bank NA and signed by Glenn Durr, President of NJ Lenders Corp. then again, the pay to the order of Wells Fargo Bank NA successor by merger to Wachovia Bank NA by Edward G. Olson Vice President Loan Documentation. This is defective as it lacks the Power of attorney or the legal instrument of the merger agreement giving Edward G Olson the power to sign as such. Also the merger agreement would have to Identify the Instrument. As it is well known that other Banks like Citigroup and Chase Bank NA received part of Wachovia's assets. See https://money.cnn.com/2008/09/29/news/companies/wachovia_citigroup/index.htm and https://www.joshuakennon.com/the-collapse-of-wachovia-how-a-bank-with-38-in-book-value-per-share-became-almost-worthless-overnight/

    e. Even if the creditor were to supply Merger agreement and or the supporting document to confirm that the alonge signed stamps were correct on the Note it still does not match the trail of the Mortgage.

4. The Mortgage

The mortgage in creditors exhibit A is defective as follows.

    a. The mortgage as recorded in the Rockland County Clerk's office states on page one After recording return to NJ Lenders Corp 219 Paterson Ave. Little Falls NJ 07424. Also on page one of the mortgage it states that the lender is NJ Lenders Corp but for the purposes of recording the mortgage, Mortgage Electronic Registration Systems Inc. (MERS), is the Mortgagee of Record. Right there the Mortgage has been split from ownership of the Note from the mortgage.

5. The Assignments of Mortgage

The assignments of mortgage as exhibited in Creditors affirmation as Exhibit A are also defective as follows:

    a. The first assignment recorded in the Rockland County Clerk's office on 10/19/2009 under Instrument number 2009-00037853 filed by Prime Title Search LLC and return to Pillar Processing LLC 220 Northpoint Parkway Amherst NY 14228 .

    b. The assignment is dated 09/21/2009 The assignor is Mortgage Electronic Registration systems as nominee for NJ Lenders Corp. The assignee as Wachovia Bank National Association. The assignment is signed by, Elpiniki Bechakas assistant Secretary and Vice president of Mortgage Electronic Registration Systems Inc. as nominee for NJ Lenders Corp its successors and assigns. **It is well known that, Elpiniki Bechakas was no way authorized to sign as such.** **This break in the chain to the creditor confirms that the creditor has no proof of claim and based on this alone the creditors motion should be dismissed.**

    c. The next assignment Filed by and returned to the creditor's law Firm Gross Polowy Orlans in the Rockland County Clerk's Office Instrument Number 2013-00002472 recorded on 01/19/2013. The assignment is 2 pages. Page one is the language and page

2

    2 is the signature and notary page. There is room on the language page to fit the signature and notary page. Why 2 Pages?

d. The assignment shows Wells Fargo Bank NA Successor by merger to Wachovia Bank NA The assignee is U.S. Bank National Association Not in its individual capacity but solely as legal title trustee for LVS Title Trust 1. The assignment dated 01/09/2013 is signed by Edward G. Olson as Vice president of loan documentation of Wells Fargo Bank NA Successor by merger to Wachovia Bank NA, Again, this is defective as it lacks the Power of attorney or the legal instrument of the merger agreement giving Edward G Olson the power to sign as such. Also the merger agreement would have to Identify the Instrument. As it is well known that other Banks like Citigroup and Chase Bank NA received part of Wachovia's assets. See https://money.cnn.com/2008/09/29/news/companies/wachovia_citigroup/index.htm and https://www.joshuakennon.com/the-collapse-of-wachovia-how-a-bank-with-38-in-book-value-per-share-became-almost-worthless-overnight/ It also Lacks the corporate seal of the assignor and or a corporate resolution authorizing Edward G Olson the power to sign as such.

e. The next assignment Filed in the Rockland County Clerk's office on 12/14/2016 Instrument Number 2015-00036194. The assignment is two pages and shows the Assignor as U.S. Bank National Association Not in its individual capacity but solely as legal title trustee for LVS Title Trust 1. The assignment shows the assignee as UMB Bank National Association, Not in its individual Capacity, but solely as legal title trustee for MART legal title trust 2015-NPL1. The assignment is dated 09/16/2015 and signed by Regina Monts as assistant Secretary of US Bank National Association Not in its individual capacity, but solely as legal title Trustee for LVS Title Trust 1 and by and through its attorney in fact Charles A. Brown and Associates PLL DBA Doc Solutions Inc. Again, this assignment is defective as it lacks the Power of attorney to act on behalf of the assignor. The corporate seal and or corporate resolution to confirm that statement. **Also please note that this Document is Prepared by Brown and associates and return to Brown and Associates. Again, this is a fraudulent assignment. On is face is a very self-serving document. Based on this filing I could prepare the same document and file it as the signatory has no connection at all to the assignor.**

f. The next assignment as Filed in the Rockland County Clerk's office on 04/07/2017 Instrument number 2017-00011892. The assignment was received from Corporation Service Co. and marked return to Corporation Service Company 100 Wood Hollow Drive Suite 170 Novato CA 94945. The Assignment shows the Assignor as UMB National Bank Association not in it's individual Capacity but solely as legal title trust 2015-NPL1. The assignee as U.S. Bank Trust National Association, as Trustee of the IGLOO Series II Trust, 7144 E Stetson Drive Suite 250 Scottsdale AZ 85251. The assignment is dated 07/26/2016. **The assignment is signed by Kristy Bliss AVP Loan Administration UMB Bank National Association, Not in its individual Capacity but solely as legal Title Trustee for MART Legal Title Trust 2015-NFL1. By Servis One Inc. dba BSI Financial Services, its attorney in fact. It also states Power of attorney to be recorded simultaneously herewith. The creditor has failed to supply this POA and where is it filed.**

3

6. **Judgment of Foreclose and sale**

In the Creditor's affirmation filed on 05/14/2018 they go on to say that they have already been granted a Judgment of Foreclosure and sale as ordered by Hon. Margaret Garvey in the Supreme court of the state of New York County of Rockland dated July 15, 2014. See creditors affirmation exhibit B. This Judgment of foreclosure was granted on a phony broken chain to the creditor fraudulently. This based on the aforementioned as evidenced herein.

7. Previous Bankruptcy filings
8. In the Creditor's affirmation filed on 05/14/2018 they go on to say that your debtor already filed previous bankruptcies and that this has been already argued. And they present exhibits C , d, and e,. The you go on to ask the court to Sign a propped In-Rem order granting a relief from the courts stay for 2 years.
9. **Based on the aforementioned as evidenced herein this order should not be signed by the court as the creditor has presented old evidence as pre the evidence presented herein by the creditor affirmation filed 05/14/2018 with exhibits provides that based on this new evidence the creditor has no valid Proof of claim and their Motion should be dismissed without prejudice.**

10. **Matters of Law and facts**

The creditor has no valid claim to have the order granted for the automatic stay based on the following;

11. **The MERS System**

12. **MERSCORP, Inc. ("MERSCORP") is a Delaware corporation with its principal place of business in Reston, Virginia. MERSCORP Q.as been registered to do business in New York as a foreign business corporation since October 1997. MERSCORP is owned by many of the most significant stakeholders in the mortgage industry, including mortgage originating and servicing companies (e.g., Bank of America, N.A., Chase Home Mortgage Corporation of the Southeast, Wells Fargo Bank, N.A., CitiMortgage, Inc., GMAC Residential Funding Corporation), government sponsored entities (e.g., the Federal National Mortgage Association, known as "Fannie Mae," and the Federal Home Loan Mortgage Corporation, known as "Freddie Mac"), mortgage insurance and title companies (e.g., First American Title Insurance Corporation and PMI Mortgage Insurance Company), and the Mortgage Bankers Association. MERSCORP owns and operates an electronic registry system that purports to track the ownership and servicing rights of its members in residential mortgage loans ("the MERS System"). There are over 3,000 members of MERSCORP.**

4

13. Mortgage Electronic Registration Systems, Inc. ("MERS Inc.") is a wholly-owned subsidiary of MERSCORP. MERS Inc. is a Delaware corporation with its principal place of business located in Reston, Virginia. MERS Inc. has been registered to do business in New York as a foreign business corporation since May 4, 1999. MERS Inc. serves as the nominal mortgagee in the public land records for loans that are registered on the MERS System. Since 2001, MERS Inc. has served as the mortgagee of record for over 1.5 million mortgages secured by properties located in the State of New York.

14. The mortgage industry created MERS to allow financial institutions to evade county recording fees, avoid the need to publicly record mortgage transfers, and facilitate the rapid sale and securitization of mortgages en masse. Under the MERS construct, MERS members purportedly log all of their mortgage transfers in a private electronic registry, instead of publicly recording the transfer in the local county clerk's office. Financial institutions avoided having to record these. transactions by designating MERS Inc. - a shell company with no economic interest in any mortgage loan - as the nominal "mortgagee" of the loan in the public records. The basic theory behind MERS is that, because MERS Inc. serves as a "nominee" (or agent) for most major lenders, it remains the "mortgagee" in the public records regardless of how often the loan is sold or transferred among MERS members.

15. In addition, since MERS Inc. has few or no employees (again to reduce costs) but serves as the mortgagee for tens of millions of mortgages throughout the county, it has indiscriminately designated over 20,000 MERS member employees as MERS "certifying officers" to act on the company's behalf, expressly authorizing these individuals to assign MERS mortgages, to execute paperwork necessary to foreclose on properties secured by MERS mortgages, and to submit proofs of claims and affidavits on behalf of MERS in bankruptcy proceedings. MERS has failed to adequately screen, train, or monitor the activities of these certifying officers, who have executed millions of important legal documents on MERS' behalf.

16. The MERS System effectively eliminated homeowners' and the public's ability to track the purchase and sale of properties through the traditional public records system. Instead, this information is now stored in a private database maintained by MERS. However, the MERS database is unreliable and inaccurate. Creditor Servicers, along with other MERS members, have failed to consistently register loan transactions in the MERS System, including transfers of ownership interests and servicing rights. Moreover, MERS did not take basic steps to ensure the data's accuracy and integrity.

17. By creating this bizarre and complex end-around of the traditional public recording system, banks achieved their primary goal - over 70 million mortgage loans, including millions of subprime loans, have been registered in the MERS System and the industry has saved more than $2 billion in recording fees. In addition, over the last several years, banks rapidly

5

securitized and sold off millions of loans, often misrepresenting the quality and nature of the mortgages being transferred.

18. However, when the subprime mortgage crisis hit, and the number of defaults and foreclosures skyrocketed around the country, the shortcomings of the MERS System and its impact on tracking a property's chain of title became readily apparent, sparking widespread litigation. The creation and use of the MERS System by Servicers and other financial institutions have resulted in a wide range of deceptive and illegal practices, particularly with respect to the filing of New York Foreclosure Proceedings in state courts and federal bankruptcy courts.

19. The use of the MERS System, coupled with faulty and sloppy document preparation and execution practices, have resulted in foreclosures being filed against New York homeowners where the foreclosing party lacked the authority or standing to sue. MERS members, including Defendant Servicers, have brought over 13,000 foreclosures against New York homeowners naming MERS as the plaintiff/foreclosing party. Indeed, for years MERS affirmatively encouraged its members to file foreclosures in MERS' name, again based on the rationale that doing so would save banks time and money. However, MERS often lacked standing to foreclose, and representations in court submissions that MERS owned and/or held the promissory note in such proceedings were often false and deceptive.

20. Even when foreclosures were not initiated in MERS' name, New York Foreclosure Proceedings involving MERS-registered loans often included deceptive submissions. Because MERS Inc. served as the mortgagee of record, the foreclosing party needed to be assigned the mortgage before filing the proceeding to have standing. In many instances, this assignment was not properly made. MERS certifying officers, including Creditor's Servicers' employees and agents, have executed and submitted to court MERS mortgage assignments that contain many defects, including affirmative misrepresentations of fact, which render them false, deceptive, and/or invalid. These assignments were often automatically generated and "robosigned" by individuals who did not review the underlying property ownership records, confirm the document's accuracy, or even read the document. These false and defective assignments have often masked gaps in the chain of title and the foreclosing party's inability to establish its authority to foreclose, and as a result have misled homeowners and the courts.

21. Although there are several New York court decisions finding that foreclosing parties lacked standing, the issue of standing is rarely raised and litigated because most homeowners lack counsel and are unfamiliar with MERS' precise role in their loan. Indeed, a significant percentage of foreclosure actions result in default judgments.

6

22. In addition, MERS' indiscriminate use of non-employee certifying officers has confused, misled, and deceived homeowners and the courts and made it even more difficult to ascertain whether a foreclosing party actually owns or holds the note and mortgage to have standing to foreclose. MERS certifying officers, including Creditor's Servicers' employees and agents, have routinely executed and submitted in court mortgage assignments and other legal documents on behalf of MERS without disclosing that they are not MERS employees, but instead are employed by other entities, such as the mortgage servicer that filed the case or its counsel. As a further complication, the same MERS certifying officer might execute multiple documents on behalf of different parties in a single proceeding.

23. In short, MERS' conduct, as well as Creditor's Servicers' use of the MERS System, have resulted in the filing of improper New York Foreclosure Proceedings, undermined the integrity of the judicial process, created confusion and uncertainty concerning property ownership interests, and potentially created clouds of title on properties throughout the State of New York. (See THE PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York V. JPMORGAN CHASE BANK, N.A.; CHASE HOME FINANCE LLC; EMC MORTGAGE CORPORATION; BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, LP; WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE, INC.; MERSCORP, INC.; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., dated 02/02/12.)

24.                              The Law firm of Steven J. Baum

25. An investigation by the state attorney general into Steven J. Baum PC is shining a new spotlight on the practices of the prominent Amherst foreclosure law firm, at a time when judges and lawyers downstate are accusing it of filing shoddy court documents.

26. Once little known outside Western New York, Baum has gained notoriety statewide and nationally, as the firm's work in the foreclosure crisis placed it in the midst of the controversy over improper legal paperwork and so-called "robo-signing."

27. Employees of banks and law firms have admitted to signing tens of thousands of affidavits and other court documents attesting to the circumstances of a foreclosure without actually knowing them or reviewing them, as required by law.

28. New York Attorney General Eric Schneiderman is seeking a horde of documents involving the relationship between the Baum firm and Pillar Processing, a former back-office affiliate whose non-lawyers still handle a lot of its paperwork.

7

29. The controversy and investigation are major issues for Baum, which employs well over 100 people in Amherst and is active in the local community.

30. 'Foreclosure factory'

31. Originally a small real estate firm, Baum has grown rapidly over the past decade into New York's dominant foreclosure firm, handling over 40 percent of filings statewide on behalf of the nation's biggest mortgage lenders and loan servicers.

32. In the process, it has mastered the task of generating and filing routine court papers through an assembly-line operation, enabling it to churn out tens of thousands of documents a year for its bank clients in an effort to speed foreclosures.

33. The firm has become the linchpin in the flood of foreclosure activity in the state. As a result, it's now squarely in the cross hairs of consumer advocates and opposing attorneys, who denounce its work and label it "a foreclosure mill" as they fight it in court.

34. Conflicts of interest

35. Many of the concerns are about ownership of a mortgage and the accompanying right to foreclose. That's been a key avenue of foreclosure defense, since a lender has to show it owns the mortgage before it can legally foreclose. With the secondary mortgage market, mortgages are sold and transferred so often that proving the chain of ownership has posed a major challenge.

36. There are also assertions of rampant conflicts of interest with Baum, as some of the firm's attorneys are signing mortgage "assignments" or transfers from one bank to another as "deputies" or agents of the Mortgage Electronic Registry Service, or MERS. At the same time, their firm represents the bank that is trying to foreclose, so the firm is representing both sides of the mortgage transfer. And during the process, their employment with Baum is not disclosed to the court.

37. MERS is a service created by the banking industry to simplify the sale and transfer of loans by recording them in MERS' name without having to file new county records each time a

different bank takes over. But the validity of the entire system, and Baum's role in it, is now under attack nationwide.

38. And there have been questions raised about the legitimacy or legality of documents and loan transfers submitted by Baum attorneys, especially where the dates on documents appear to conflict or be out of order with the timing of events.

39. In February, Judge Arthur Schack of State Supreme Court in Brooklyn slammed a Baum attorney for accidentally including, in a letter to the judge, the "boilerplate" language that the firm's attorneys "are debt collectors who are attempting to collect a debt."

40. <u>In fact The Hon Arthur M. Schack found the Law Firm of Steven Baum guilty of filing Foreclosure cases without the proper supporting documentation. In judge Schack's decision found that US bank should have never filed the foreclosure action because of the "ineffective assignment of Mortgage". It was found that a Baum Lawyer Elpiniki Bechakas, signed papers claiming to be an executive of Mortgage Electronic Registration systems Inc. "MERS". This is a mirror of what was done here. That is why the Baum Firm asked to withdrawn the Judgment of foreclosure. As was done here to your debtor.</u>

41. In Nassau County District Court, Judge Scott Fairgrieve accused the Baum firm of misrepresenting its client's position and trying to mislead the court, calling its actions "outrageous," "reprehensible" and "repugnant."

42. <u>In fact the whole southern district is pledged with Fraudulent documents filed by filed by the Baum Law firm.</u>

43. Based on all of my previous pleading and the aforementioned herein the Creditor is trying to Foreclose by way of a default judgment to cover up the fact that they do not have legal ownership of the security instrument. It is also a violation of federal law.

44. A copy of the security instrument is not a sufficient proof of claim as per U.C.C. - ARTICLE 3 - §3-501 (b) 2 (1). Under this code, I am entitled to have the instrument presented to me as you are required to upkeep the legal document entrusted to the Creditor.

9

45. Under USC Title 18 Chapter 25, the Creditor, is engaging in counterfeiting and such behavior is a felony. Providing a photocopy of a security instrument is not only unconscionable but is illegal. Your Defendant respectfully demands visual inspection of the original promissory note, not a copy.

46. The Creditor did not provide any proof to sufficiently satisfying the Plaintiff's claim under U.C.C. - ARTICLE 3 -§3-302 that they are a note holder in due course.

47. Under the Uniform Commercial Code Section 3-204, the name and the signature of both the beneficiary and the original creditor must be disclosed in the same document s3-204 (d). The signature of the borrower must be included in the assignment, unless a clause in the deed waives that.

48. Under New York Law, a Party has standing to foreclose on a property only if it is the holder or assignee of both the note and the mortgage at the time the foreclosure action commences. See U.S. Bank Nat'l Ass,n V. Madero, 80 A.D. 3d 751, 752-53, 915 N.Y.S. 2d 612 (2d Dep't 2011); Courtywide Home Loans, Inc. V. Gress, 68 A.D. 3d 709 (2d dep't 2009).

49. A promissory note, which is a negotiable instrument, must be either endorsed to the foreclosing party on the Note itself (or firmly affixed alonge ), or endorsed in blank or to bearer and physically held by the foreclosing party. See N.Y. UCC §§ 3-204(1)-(2).

50. The fact that a foreclosing party is the mortgagee of record does not by itself make the party the holder or assignee of the note as required to have standing to foreclose under New York Law. See United States Bank V. Sharif, 89 A.D. 3d 723, 725, 933 N.Y.S.2d 293, 296 (2d Dept. 2011).

51. Nor can a Creditor prove that it possessed the note at the time the action was filed solely by producing a copy of the note, with an undated endorsement, after the foreclosure action has been commenced. Evidence of the date the note was delivered to the Plaintiff is required. See United States Bank Nat'l V. Sarmiento, Index No. 1124/09, Dec. 19, 2011 Order (N.Y. Sup. Ct.).

52. Pursuant to Executive Law § 63(12), it is unlawful for a business to engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting, or transaction of business.

53. General business Law§ 349 prohibits deceptive acts and practices in the conduct of any business, trade, or commerce.

54. Based on the evidence and matters of law as presented herein this action should be dismissed entirely.

55. Therefore, It is respectfully demanded that the Court grant the Debtor relief in its entirety, staying, enjoining and restraining Creditor from conducting the foreclosure sale of the subject property at 97 1st Ave. Nyack NY 10960, annulling and vacating the judgment of foreclosure and sale, <u>At the very lease the Creditor's motion should be dismissed and the Chapter 13 Case should be withdrawn without prejudice as per your Debtor Notice filed on July 5, 2018 (docket 24).</u>

Dated Nyack New York
This 20 day of July 2018

_____
Eve Mary Maddux
97 1st Ave
Nyack NY 10960

Sworn to before me this 20 day of July 2018

_____
Notary

BARBARA B. KUNAR
Notary Public, State of New York
No. 01KU6061272
Qualified in Rockland County
Commission Expires July 16, 20 19

To: Ehret Anne Van Horn Esq.
GROSS POLOWY, LLC
Attorneys for Secured Creditor
US BANK TRUST NATIONAL ASSOCIATION,
AS TRUSTEE OF THE IGLOO SERIES II TRUST
AND A DELAWARE STATUTORY TRUST
1775 Wehrle Drive,
Suite 100
Williamsville, NY 14221
Telephone (716)204-1700

Krista M. Preuss
399 Knollwood Road
White Plains, NY 10603

11

U.S. Trustee
United States Trustee
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street,
Suite 1006
New York, NY 10014

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re: | Affidavit of Service |
| Eve E. Mory aka Eve Mary Maddux | Case No.: 18-22689-rdd |
|  | (Chapter 13) |
|  | Assigned to: |
|  | Hon. Robert D. Drain |
| Debtor | Bankruptcy Judge |

State of New York      )
County of Rockland    )
Village of Nyack          )

I Compton Maddux being duly sworn, deposes and says I am over 18 Years of age. I am not the Debtor in this case. I live at 97 1st Ave Nyack NY 10960.

That on July 20 2018 deponent served the Debtor Objection dated July 20, 2018 to the Creditor's Motion for Termination of automatic stay dated May 14, 2018 and returnable for hearing on July 25, 2018 at 10:00 AM at the United States Bankruptcy Court 300 Quarropas Street White Plains NY 10601. This was done by United States Postal service priority Mail to the following:

To: Ehret Anne Van Horn Esq.
GROSS POLOWY, LLC
Attorneys for Secured Creditor
US BANK TRUST NATIONAL ASSOCIATION,
AS TRUSTEE OF THE IGLOO SERIES II TRUST
AND A DELAWARE STATUTORY TRUST
1775 Wehrle Drive,
Suite 100
Williamsville, NY 14221
Telephone (716)204-1700

Krista M. Preuss
399 Knollwood Road
White Plains, NY 10603

U.S. Trustee
United States Trustee
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street,
Suite 1006
New York, NY 10014

Dated Nyack New York
This 20 day of July 2018

_____
Compton Maddux

Sworn to before me this 20 day of July 2018

_____
Notary

BARBARA B. KUNAR
Notary Public, State of New York
No. 01KU6061272
Qualified in Rockland County
Commission Expires July 16, 20__19

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm.

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
https://postalexperience.com/Pos

840-5105-0120-001-00016-77623-02

or scan this code with
your mobile device:

[QR code]

or call 1-800-410-7420.

YOUR OPINION COUNTS

Bill #:   840-51050120-1-1677623-2
Clerk:    13

---

```
=====================================
              NYACK
           48 S BROADWAY
              NYACK
               NY
            10960-9998
            3560650080
07/20/2018   (800)275-8777   10:39 AM
=====================================
=====================================
Product              Sale       Final
Description          Qty        Price
-------------------------------------
PM 1-Day              1         $6.70
Flat Rate Env
    (Domestic)
    (WHITE PLAINS, NY  10603)
    (Flat Rate)
    (Expected Delivery Date)
    (Saturday 07/21/2018)
    (USPS Tracking #)
    (9505 5141 9076 8201 1351 63)
Insurance             1         $0.00
    (Up to $50.00 included)
PM 1-Day              1         $6.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10014)
    (Flat Rate)
    (Expected Delivery Date)
    (Saturday 07/21/2018)
    (USPS Tracking #)
    (9505 5141 9076 8201 1351 70)
Insurance             1         $0.00
    (Up to $50.00 included)
PM 3-Day              1         $6.70
Flat Rate Env
    (Domestic)
    (BUFFALO, NY  14221)
    (Flat Rate)
    (Expected Delivery Date)
    (Monday 07/23/2018)
    (USPS Tracking #)
    (9505 5141 9076 8201 1351 87)
Insurance             1         $0.00
    (Up to $50.00 included)
Dom M.O. -                    $100.00
Value
    (Serial#:25140756734)
Dom M.O. Fee                    $1.20
-------------------------------------
Total                         $121.30
-------------------------------------
Debit Card Remit'd            $121.30
    (Card Name:VISA)
    (Account #:XXXXXXXXXXXX0091)
    (Approval #:       )
    (Transaction #:068)
    (Receipt #:006794)
    (Debit Card Purchase:$121.30)
    (Cash Back:$0.00)
    (Entry Mode:Chip)
    (AID:A0000000980840)
    (Application Label:US DEBIT)
    (PIN:Verified by PIN)
    (Cryptogram:2385E5D35B827D1A)
    (ARC:00)
    (CVR:420000)
    (IAD:06010A03602000)
    (TSI:6800)
    (TVR:8000048000)
```